```
KAREN A. OVERSTREET
Chief Bankruptcy Judge
United States Courthouse
700 Stewart St., Suite 6310
Seattle, WA  98101
206-370-5330
```

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re<br><br>JOON SIK KIM and<br>YOON KYUNG KIM,<br><br>        Debtors. | Chapter 7<br><br>Bankruptcy No. 10-10665 |
| TONY'S TRADING, INC.,<br><br>        Plaintiff.<br><br>v.<br><br>JOON SIK KIM and<br>YOON KYUNG KIM,<br><br>        Defendants. | Adversary No. 10-01062<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

This matter came before me for trial on June 10, 2010.  Joon and Yoon Kim appeared pro se at the hearing with the assistance of their son, Min Kim, who is not an attorney.  Plaintiff, Tony's Trading, Inc., appeared through its counsel.  This Memorandum Decision contains the Court's findings of fact and conclusions of law for purposes of Bankruptcy Rule 7052.  Jurisdiction of this

MEMORANDUM DECISION - 1

matter is proper under 28 U.S.C. §§ 157 and 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I).[1]

For the following reasons, the Court finds in favor of defendants and any obligation they owe to plaintiff is discharged.

**I. BACKGROUND**

Plaintiff brings this matter under Sections 523(a)(2), (a)(4), and (a)(6) to except from discharge a debt alleged in the amount of approximately $75,000. Plaintiff alleged in the complaint that it had obtained a default judgment in state court against defendants in this amount, but plaintiff presented no evidence at trial of such a judgment.

**II. FINDINGS OF FACT**

Plaintiff began business 13 years ago as a wholesale seller of various products, including cigarettes, to wholesale grocery stores and gas stations primarily in Washington state. Tony Liu, plaintiff's president, testified that plaintiff sells approximately 200 different products to approximately 200 customers. In 2005 or 2006 (the testimony was unclear), defendant Joon Kim was hired as a salesman for plaintiff. Mr. Kim is Korean born with limited English speaking ability. He came to the United States in 1998 from Korea, where he had achieved a masters degree and was working as a stock broker. He had never worked as a salesman before being hired by plaintiff.

---

[1] Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

MEMORANDUM DECISION - 2

In exchange for the payment of a base salary and commissions on sales, Mr. Kim took merchandise from plaintiff's warehouse, carried it in a truck owned by plaintiff, and delivered the merchandise to customers of plaintiff. Mr. Kim called on established customers of plaintiff and was also expected to solicit new customers for plaintiff's business. Mr. Liu testified that when Mr. Kim was hired, he was given 70-80 existing customers to service. Mr. Kim testified that he built up the number of customers he serviced to between 100 and 130 customers.

Initially, Mr. Kim was paid $1,000 as a base salary plus a commission of 13% on sales of more than $10,000 per month. Mr. Kim also received reimbursement of his out-of-pocket expenses such as gas, meals, and lodging. Weekly or daily, Mr. Kim was given merchandise from plaintiff's warehouse and an invoice was prepared showing the number of items, the unit cost and the total. Each invoice also showed an amount listed as "Consignment" which was either added to or subtracted from the inventory balance. The amount shown on each invoice as "Total Paid" represented the amount of merchandise that had been sold by Mr. Kim and therefore applied as a credit to the total. The invoices were prepared by plaintiff's warehouse employee. Plaintiff put into evidence Ex. P-9, which contains these invoices from May 31, 2008 to October 31, 2008.

Because all of the inventory could not be sold in one day, Mr. Kim was permitted to keep the merchandise in his truck. Mr. Liu testified that if the truck was full, Mr. Kim could have as much as $30,000 to $40,000 in inventory stored in the truck at any given time. When Mr. Kim sold merchandise, he submitted

MEMORANDUM DECISION - 3

plaintiff's form of invoice to the customer and collected checks (made payable to plaintiff) and cash to be turned over to plaintiff. Mr. Kim testified that during the term of his employment, he paid over all checks and cash he received from customers to plaintiff, and plaintiff did not dispute that testimony.

By September of 2006, there was a discrepancy between the amount of merchandise plaintiff claimed to have given Mr. Kim and the amount that Mr. Kim could account for in his truck. Both Mr. Kim and Mr. Liu testified that the amount of the discrepancy was $13,000. Mr. Kim testified that the discrepancy was explained by his delivery of free samples of merchandise to prospective customers and free merchandise given to good customers as a reward for their continued business. Mr. Liu did not dispute that testimony. Mr. Liu wanted Mr. Kim to pay the amount of the discrepancy. Unable to pay, Mr. and Mrs. Kim signed a deed of trust against their condominium in favor of plaintiff to secure repayment of the amount owed. Ex. P-4. The deed of trust, however, states that it secures $23,505. Mr. Liu explained that although only $13,000 was owed at the time, he wanted to have "some cushion." Mr. Liu testified that he changed Mr. Kim's compensation after September of 2006, paying him only a commission of 13% on all merchandise sold with no base salary because Mr. Kim could "no longer be trusted." In addition, he required Mr. Kim to begin paying $500 per month for the use of plaintiff's truck and $170 per month for insurance.

Mr. Kim testified that he felt he could never get ahead while in plaintiff's employ. He felt that the more merchandise he sold,

MEMORANDUM DECISION - 4

the more he owed the plaintiff. He claimed that the invoices in Ex. P-9 contained not just the amount of inventory he had been given, but also interest, product markups, and charges for the truck and insurance. Mr. Kim signed each of the invoices in Ex. P-9, except for the last invoice dated October 31, 2008.

Mr. Kim decided to quit working for plaintiff in October 2008. Mr. Liu testified that the invoice in Exhibit P-9 dated October 31, 2008, documents the final balance owed by Mr. Kim for inventory he had been issued for sale. According to Mr. Liu, the October 31, 2008 invoice reflects a carry over balance owed by Mr. Kim of $75,523.16, plus $4,196 as a "consignment", less $5,114.37 in inventory returned. Mr. Liu contends the balance of $74,604.86 is owed by Mr. Kim and is nondischargeable.

Mr. Kim testified that in addition to the $13,000 in inventory he knows he was short from 2006, he lost an additional $25,000 in inventory in two separate thefts from his truck. According to him, one theft occurred in 2006 and the other in 2008. In one incident, his truck was broken into during the night and in the other incident his merchandise was stolen from his unlocked truck while he was parked at a customer's location. He reported only the night time theft to the police and reported that theft also to Mr. Liu a couple of months after it occurred. He did not report the theft from the customer's location to the police or to Mr. Liu. Mr. Liu testified that had Mr. Kim reported the thefts, he could have recovered some or all of the value of the inventory from insurance.

### III. CONCLUSIONS OF LAW

Based upon the foregoing findings of fact, the Court makes the following conclusions of law. The plaintiff has the burden of

MEMORANDUM DECISION - 5

proving each element of Section 523 by a preponderance of the evidence. *Grogan v. Garner*, 298 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge, however, are to be construed strictly against the objecting creditor and liberally in favor of debtor. *In re Linn*, 38 B.R. 762 (Bankr. 9th Cir. 1984).

A. <u>Section 523(a)(2) - Fraud</u>.

To prove fraud under Section 523(a)(2)(A), plaintiff must prove the following elements:

(1) a representation of fact by the debtor;

(2) that was material;

(3) that the debtor knew at the time to be false;

(4) that the debtor made with the intention of deceiving the creditor;

(5) upon which the creditor relied;

(6) that the creditor's reliance was justifiable; and

(7) that damage proximately resulted from the misrepresentation.

*In re Siriani*, 967 F.2d 302 (9th Cir. 1992). Plaintiff failed to present proof of any false representation made by defendants. Accordingly, I find that plaintiff is not entitled to a judgment of nondischargeability under Section 523(a)(2).

B. <u>Section 523(a)(4) - Fraud While Acting as a Fiduciary, Embezzlement, Larceny</u>.

1. <u>Fiduciary Capacity</u>.

To prove fraud or defalcation while acting in a fiduciary capacity, a plaintiff must show that the defendant was a fiduciary to whom funds were entrusted. The burden then shifts to the fiduciary to account fully for all funds received for the

MEMORANDUM DECISION - 6

plaintiff's benefit by establishing that he complied with his fiduciary duties as to all questioned transactions. The meaning of "fiduciary" under Section 523(a)(4) is an issue of federal law. "Section 523(a)(4) excludes constructive, resulting or implied trusts. A fiduciary relationship for purposes of § 523(a)(4) exists only where there is an express or statutory trust. *In re Aubrey*, 111 B.R. 268, 275 (9th Cir. BAP 1990); *see also In re Pedrazzini*, 644 F.2d 756, 758 n. 2(9th Cir. 1981)." *In re Martin*, 161 B.R. 672, 676 (9th Cir. BAP 1993). Courts must look to state law to determine whether the requisite trust relationship exists. "The statute must define the trust res, spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt." *In re Baird*, 114 B.R. 198, 202 (9th Cir. BAP 1990).

In this case, the relationship between plaintiff and Mr. Kim was that of employer and employee. Mr. Kim was a salesman for plaintiff and no more. He was not acting in a fiduciary capacity for purposes of Section 523(a)(4) thus the plaintiff is not entitled to a judgment of nondischargeability on that basis.[2]

2. <u>Embezzlement</u>.

Embezzlement under Section 523(a)(4) is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. More specifically, the elements of an embezzlement claim do not require that the actor be a fiduciary. To prove embezzlement, plaintiff

---

[2] Mr. Kim contended that he was not an employee, but rather an independent salesman servicing his own clients. All of the evidence, however, proves otherwise.

MEMORANDUM DECISION - 7

must show that it entrusted its inventory to Mr. Kim, Mr. Kim appropriated the inventory for a use other than that for which it was entrusted, and the circumstances indicate fraud. *Clark & Gregory, Inc. v. Hanson (In re Hanson)*, 225 B.R. 366, 374 (Bankr. W.D. Mich. 1998); *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). Mere negligence does not indicate the kind of fraud necessary for a case of embezzlement.

There was no fraud indicated by Mr. Kim's giving of samples to customers, and plaintiff did not argue that was an impermissible way to solicit customers. Further, although plaintiff may dispute that Mr. Kim lost inventory as a result of thefts, there was no evidence that Mr. Kim stole the inventory or used any of it for his own use. Consequently, I conclude that plaintiff has failed to prove embezzlement.

    3.   <u>Larceny</u>.

"Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner." 4 L.P King, *Collier on Bankruptcy*, ¶ 523.10[2] at 523-76 (15th ed. rev. 1998). In contrast to embezzlement, "for a larceny claim, the felonious intent must have existed at the time of the taking." *Id*.

Larceny does not apply to the facts of this case, however, because the plaintiff's inventory was entrusted to Mr. Kim and not taken by him without the consent of plaintiff.

C.   <u>Section 523(a)(6) - Conversion, Malicious Injury</u>.

Proof of a cause of action under Section 523(a)(6) requires a two step process. First, plaintiff must prove that Mr. Kim committed a "willful" injury. *Khaligh v. Hadaegh (In re Khaligh)*,

MEMORANDUM DECISION - 8

338 B.R. 817, 831 (9th Cir. BAP 2006). To satisfy the willfulness element, a creditor must prove that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended not just to commit the act itself, but also intended the consequences of the act. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). Further, the Court must apply a subjective test in determining the debtor's intent. "[Section] 523(a)(6) renders a debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain." *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1144 (9th Cir. 2002).

The second step in the Section 523(a)(6) analysis is to determine whether the debtor's conduct was "malicious." *Kaligh*, 338 B.R. at 831. In order to be found malicious, the debtor must have committed a (1) wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) which is done without just cause or excuse. *Id*. The last element, whether the act was done without just cause or excuse, presents a mixed question of law and fact. *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1105-06 (9th Cir. 2005), *cert. denied* 125 S.Ct. 2964 (2005). Evidence of specific intent to injure can negate just cause or excuse. *Khaligh*, 338 B.R. at 831.

Unlawful conversion of another's property may constitute a willful and malicious injury. To prove conversion, the creditor must prove that when the debtor converted the creditor's property, he had the specific intent to deprive the creditor of the property or did so knowing, with substantial certainty, that the creditor would be harmed by the conversion. *Spokane Ry. Credit Union v.*

MEMORANDUM DECISION - 9

*Endicott (In re Endicott)*, 254 B.R. 471 (Bankr. D. Id. 2000). The creditor is entitled only to damages in the amount of the value of the property converted.

Mr. Kim admitted that as of September of 2006, when Mr. Kim and his wife executed the deed of trust in favor of plaintiff, there was a discrepancy of $13,000 in the amount of inventory he had compared to what he had taken from plaintiff's warehouse to sell. Mr. Kim explained that the discrepancy arose because of his practice of providing samples of goods to prospective customers and rewarding good customers by providing them with additional goods at no cost. While this might not have been the best strategy from a business perspective, it was neither "willful" nor "malicious" within the meaning of the authorities cited above. In fact, Mr. Kim evidenced his intention to repay the shortfall by executing the deed of trust. Ex. P-4.

Mr. Kim also contended that the balance of the shortfall in inventory returned to plaintiff resulted from two thefts of inventory valued at "over $25,000." As recited in the findings of fact above, Mr. Kim provided few details about these thefts. Mr. Kim's son stated that he was with Mr. Kim when one theft was reported to police, but there is no evidence that Mr. Kim reported the other theft to the police or anyone else. Mr. Liu testified that had Mr. Kim reported the thefts, he could have recovered all or some of the value of the inventory from insurance.

The last invoice in Exhibit P-9 is dated as of October 31, 2008, and shows that Mr. Kim's balance owed to plaintiff for inventory and other charges was $74,604.86, after crediting Mr. Kim with the amount of inventory he returned. Plaintiff, however, did

MEMORANDUM DECISION - 10

not provide any breakdown of that number or of the carryover number in the first invoice in Ex. P-9, which is dated May 31, 2008. That invoice indicates a carryover balance of $63,183.86 from prior periods for which plaintiff also failed to provide any breakdown. Presumably that balance includes the $23,505 amount secured by the deed of trust as Mr. Liu testified that Mr. Kim never paid any of that indebtedness. In addition, the invoices in Ex. P-9 include approximately $32,802 in amounts designated as Consignments, which were not explained. Of that amount $28,890 represents amounts added to Mr. Kim's balance. Deducting that amount ($28,890) and the amount of the secured claim ($23,505) from the total amount of $74,604.86, leaves a balance not accounted for of $22,210. The evidence is not clear whether this balance represents unaccounted for inventory or some other charge. I find that plaintiff failed to meet its burden of proving the amount of inventory that was converted by Mr. Kim.

Plaintiff also failed to prove any willful or malicious conduct by Mr. Kim with regard to the missing inventory. Although Mr. Liu might believe that the thefts to which Mr. Kim testified never occurred, there was no proof that Mr. Kim had converted any of the inventory to his own use, or sold inventory and kept the proceeds for himself. Plaintiff must prove some affirmative action by Mr. Kim intended to injure plaintiff. For example, in the case of *In re Foust*, 52 F.3d 766 (8th Cir. 1995), the court upheld the denial of the debtor's discharge under Section 523(a)(6) where the debtor had secretly converted crops which secured a government loan by selling the crops to distant grain elevators and placing the proceeds of the sales in his personal accounts. The debtor then

MEMORANDUM DECISION - 11

fabricated reports of grain thefts to cover up his scheme. *See also Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480 (5th Cir. 1986)(discharge of corporate president denied under Section 523(a)(6) where he took proceeds of inventory sales to Las Vegas in hope of winning enough money to save dealership). No such showing was made in this case.

Mr. Kim's failure to report the thefts so that plaintiff could make an insurance claim may have been negligent or even grossly negligent. Even gross negligence, however, generally does not rise to the level of intentional conduct required to support a finding of malicious and willful injury under Section 523(a)(6). *Geiger,* 523 U.S. at 62-64. Plaintiff failed to show that Mr. Kim, by failing to report thefts, specifically intended to cause injury to plaintiff or knew that injury was substantially certain to occur. Plaintiff failed to advance any alternative tortious theory demonstrating Mr. Kim's responsibility for the unaccounted for merchandise or intent to cause injury to plaintiff. Accordingly, I conclude that plaintiff has not met its burden of showing the debt nondischargeable under Section 523(a)(6).

D. <u>Liability of Joon Kim</u>.

Having concluded that Mr. Kim did not commit any act rendering his indebtedness to plaintiff nondischargeable, any potential community liability of Mrs. Kim is likewise dischargeable.

**CONCLUSION**

For the reasons stated, the Court finds that plaintiff has not proved a case under any of Sections 523(a)(2), (a)(4) or (a)(6), therefore the debts which are the subject of these proceedings are

MEMORANDUM DECISION - 12

dischargeable in bankruptcy.  Judgment will be entered in favor of the defendants on all claims for relief.

//END OF MEMORANDUM//

*Karen A. Overstreet*
United States Bankruptcy Judge
(Dated as of Entered on Docket date above)

MEMORANDUM DECISION - 13